OPINION
{¶ 1} Appellant, Patrick J. Haren, seeks a reversal of a judgment of the Miami County Municipal Court finding him guilty, after a bench trial, of violating Ohio Revised Code § 4301.69. That section prohibits the sale of alcohol to an underage person. Appellant, in his sole assignment of error, asserts that the verdict is manifestly against the weight of the evidence. Reviewing all of the evidence in the record, we are unable to conclude that the trial court lost its way in finding the Appellant guilty of violating R.C. 4301.69, and thus we affirm the trial court's judgment.
 {¶ 2} Haren's conviction was in connection with an undercover operation being conducted by the City of Troy Police Department to determine if any retail alcohol establishments were selling alcohol to underage persons. In conducting the operation the Police would use a person under twenty-one years of age as a confidential informant. The Police would fit the informant with audio recording equipment and would have him attempt to purchase alcohol at various locations on a particular night. On August 30, 2003, the Police were using Jeremy Alspaugh, who was nineteen years old, as their confidential informant. (Tr. 3).
 {¶ 3} One of the establishments visited by Alspaugh on August 30, 2003, and at which he was able to purchase alcohol, was the One Stop Drive Thru. (Tr. 38). The Appellant, Haren, is employed at the One Stop Drive Thru and was working on the night of August 30th, 2003. (Tr. 57). After purchasing a six pack of Bud Light from the One Stop, Alspaugh radioed Detective Todd Sloan, who had been listening to the exchange at the One Stop from his vehicle. At that time Alspaugh and Sloan decided where to meet for debriefing. (Tr. 4-5). At trial Alspaugh testified that at the debriefing he blurted out "[d]amn I didn't even look at what he looked like," in reference to the clerk who had sold him beer at the One Stop. (Tr. 47). He further testified, however, that he was thinking out loud and that after thinking about it he could recall what the clerk looked like. (Tr. 48).
 {¶ 4} On September 1, 2003, Sergeant Jeffrey Kunkleman went to the One Stop to identify the clerk, based on the description given by Alspaugh, and to issue the person a citation. He approached Haren and asked him if he was working on the night of August 30, 2003. (Tr. 27). Haren admitted to working on that night, but denied the he was the person who had sold alcohol to Alspaugh. (Tr. 27-28).
 {¶ 5} At this point, Kunkleman contacted Detective Sloan and asked Sloan to contact Alspaugh and have him go back through the One Stop to identify the clerk that sold him the beer. (Tr. 33). Kunkleman further advised Sloan that Alspaugh should look at the clerk wearing the "yellow Tommy shirt and khaki shorts" to see if that was the clerk who had sold Alspaugh the beer. (Tr. 34). Upon Detective Sloan's instructions, Alspaugh did return to the One Stop and positively identified Haren, who was wearing a "yellow Tommy Shirt and khaki shorts," as the clerk who had sold him beer on August 30, 2003. (Tr. 49).
 {¶ 6} At trial, Haren testified that he was one of three men working at the One stop on the night of August 30, 2003. (Tr. 57). He stated that Alspaugh's physical description of the clerk, contained in the police report, more accurately described the owner, Steve Stoltz, who was working on August 30th. (Tr. 57-58).
 {¶ 7} After hearing testimony from Alspaugh, Detective Sloan, Sergeant Kunkleman, and the Defendant, Haren, the trial court rendered a decision finding the testimony of Alspaugh "particularly compelling and quite credible," and further finding Haren guilty of a violation of Revised Code § 4301.69.
 {¶ 8} In his sole assignment of error, Haren contends that his conviction was against the manifest weight of the evidence. In the parties' briefs there is some dispute as to the proper standard of review for appellate courts when reviewing the weight of evidence in criminal cases. The Supreme Court of Ohio has explicitly stated the standard and method of review for a manifest weight inquiry. In State v. Thompkins,
the Court stated that:
 {¶ 9} "The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." (1997), 78 Ohio St.3d 380, 388, quoting State v. Martin
(1983), 20 Ohio App.3d 172, 175.
 {¶ 10} In reviewing the record we are "not required to view the evidence in a light most favorable to the prosecution, but may weigh all of the evidence produced at trial." Thompkins, 78 Ohio St.3d at 390
(Cook, J., concurring). However, great deference should be given to the original factfinder's determinations of credibility. See State v. Lawson
(Aug. 22, 1997), Montgomery App. No. 16288, at p. 5 ("the cautious exercise of the discretionary power of a court of appeals to find that a judgment is against the manifest weight of the evidence requires that substantial deference be extended to the factfinder's determinations of credibility.").
 {¶ 11} The standard adopted by the Supreme Court makes clear that a reviewing court should be convinced that the factfinder "clearly lost its way" and created a "manifest miscarriage of justice." Thompkins,78 Ohio St.3d at 387. The Court clarified that this occurs only in the "exceptional case in which the evidence weighs heavily against the conviction." Id. (emphasis added). Further, the testimony of a single person is sufficient to sustain a conviction. State v. Stern (2000),137 Ohio App.3d 110, 116, 738 N.E.2d 76; State v. Tillman (1997),119 Ohio App.3d 449, 460, 695 N.E.2d 792.
 {¶ 12} Haren asserts that on the sole contested issue, of whether he was the person who actually sold the alcohol to Alspaugh, the trial court has "clearly lost its way." We disagree. Although there are discrepancies between the description Alspaugh gave the Police the night of August 30th and Haren's actual physical appearance, Alspaugh provided plausible explanations for those discrepancies when testifying at trial. For example, Alspaugh initially described the person who sold him beer as being short, whereas Haren is six feet tall; however Alspaugh explained that "I was sitting in a truck. He looked short to me." (Tr. 48). Further, as to the discrepancy in hair color, Alspaugh initially stated that the person who sold him beer had blond hair, whereas Haren has brown hair; however, Alspaugh reconciled this discrepancy by explaining that "he had a hat on, and I could only see the sides." (Tr. 48). Based on these explanations and the subsequent in-person identification on September 1, 2003 we can not say that the trial court clearly lost its way. Further, the trial judge's ability to see and hear Alspaugh's testimony, which he found "particularly compelling and quite credible," requires substantial deference on our part. In sum, we can not say that the evidence weighs heavily against a conviction.
 {¶ 13} We conclude that Haren's conviction for sale of alcohol to an underage person is not against the manifest weight of the evidence. Therefore, Haren's sole assignment of error is overruled, and the judgment of the trial court is Affirmed.
Wolff, J. and Fain, J., concur.